## JOSHUA NASH *et ux. versus* PLINY CUTLER *et al.*

Devise : — " I give and devise to my wife the use and improvement of one third part of all my real and personal estate, during her natural life; and I give and devise the same at her decease to my children, their heirs and assigns." It was *held*, in regard to the real estate, that this clause gave a vested remainder to the children, and that by virtue of *St.* 1785, *c.* 62, § 4, they took the same as tenants in common.

The *St.* 1805, *c.* 90, enacts that when any person shall die seised of any land, not having lawfully devised the same, the same shall descend, when there shall be no issue nor father, in equal shares to the intestate's mother, if any, and to his brothers and sisters, *provided* that when any child shall die under age, not having been married, his share of the inheritance that came from his father shall descend in equal shares to his father's other children then living, and to the issue of any such other children who shall have died, by right of representation. *Held*, that this proviso does not apply to land which came to the intestate by *devise* from his father; and, consequently, that a share of such land descends to the intestate's mother.

A testator, having devised land to his children as tenants in common, died leaving five children and a widow, their mother. Two of the children died intestate and without having been married, one of full age, the other an infant. The mother married a second husband, and joined with him in a petition that the share which descended to her from the child who was of age, should be set off to her, and partition was made accordingly, no claim being made by them to a share of the infant's land, they supposing, probably, that the whole descended to the surviving children. The infant's land had remained in the hands of the executor, until the wife died. On a bill in equity against the executor, it was *held*, that the petition and judgment for partition did not estop the husband from claiming a share of the rents received by the executor after the death of the infant and during the coverture, nor bar the heir of the mother from claiming her share of the infant's land.

BILL in equity, brought by Joshua Nash and Paulina his wife, against Pliny Cutler, William A. Kent, Ralph W. Emerson, and William R. P. Washburn.

Nash
*v.*
Cutler.

The bill alleges, that Beza Tucker, by his wil., dated March 6, 1820, and proved June 6, 1820, after devising and bequeathing to divers persons, divers tracts of land and divers annuities, bequeathed and devised as follows : —

" Item, I give and devise to my beloved wife Margaret, the use and improvement of one third part of all my real and personal estate, during her natural life ; and I give and devise the same at her decease to my children, hereinafter named, to hold the same to them, their heirs and assigns."

" Item, I give and bequeath all the rest, residue and remainder of my estate, real and personal, to my son George Washington, and my daughters Mary, Margaret, Paulina and Ellen, to be equally divided between them ; and to be distributed to them, as they shall respectively arrive at the age of twenty-one years, and not before ; so far as the same can be done, consistently with the lien hereinafter created ; to hold to them, their heirs and assigns for ever ; subject to the payment of the legacies hereinbefore given ; and I do hereby charge the rest, residue and remainder of my estate, real and personal, herein bequeathed to my children, with the payment of the annuities aforesaid. And I do hereby authorize and empower my executors to receive the rents, income and interest of the residue of my estate, real and personal, hereby bequeathed to my children, and out of the same to pay the annuities aforesaid, and also appropriate and apply the whole of the remainder of said rents, income and interest, or such part as they shall judge necessary and proper, to the support and education of my children, until they respectively arrive at the age of twenty-one years. "

The bill further alleges, that the testator died leaving Margaret, his widow, and the five children above named ; that Cutler is the surviving executor of the will, that Paulina, one of the children and one of the plaintiffs, intermarried with Joshua Nash, the other plaintiff, on April 2, 1830, and that she has survived the other four children ; that before their marriage Cutler, the executor, had in his hands a large amount of the personal estate of the testator, and that Paulina, during her minority, did not expend the whole of the income of her

share of the residue of the real and personal estate, and that a large surplus thereof remains in the executor's hands :  ·

That Mary died on June 26, 1823, under age, intestate, and having never been married :

That George died on October 1, 1825, after having come of age, testate, but leaving the principal part of his estate, real and personal, undisposed of :

That Ellen, in 1829, intermarried with Emerson, and on February 8, 1831, died intestate, without issue, and under age :

That Margaret, the daughter, died on November 24, 1832, of full age, and having made a will, of which Washburn was appointed the executor :

That Margaret, the widow, intermarried with Kent in 1821, and died on February 28, 1833, and that Kent has taken letters of administration on her estate :

That Paulina, as survivor of her brother and sisters and mother, and as devisee, is entitled under the will of Beza Tucker, to the whole of the real and personal estate the use whereof was devised by Beza to his wife during life, being one third part of all his real and personal estate, free from all charges, annuities, legacies and incumbrances, together with such rents, profits, interest or accumulation, as may have arisen or accrued in respect to such third part, beyond what has been used, consumed, disposed of and expended by Margaret Kent during her life :

That she is entitled to that portion of the real estate which by the residuary clause was devised to Mary, with the rents thereof, subject to the annuities :

That she is entitled to one third part of the personal estate, and to three fifths of the real estate, mentioned in the residuary clause, with the rents and increase, subject to the annuities :

That she is entitled to such other portions of the personal estate bequeathed to Mary and George, as descended to her mother :

And that she is entitled to the surplus of the income of her share before mentioned, not expended for her support and education.

It is further alleged, that Joshua Nash, by virtue of his intermarriage with Paulina, is entitled to the custody and possession as of his own goods, of the shares of Paulina in the personal estate, and is entitled to have the same delivered over to him, so far as the same are not necessary to pay the annuities ; and that he is in like manner entitled to the enjoyment and actual seisin and possession of the real estate, in right of his wife ; and that he is entitled to have a portion of the real and personal estate set aside to pay the annuities, and to have the same assigned and paid over to him from time to time as the annuities shall be extinguished.

The answer of Cutler admits the facts stated by the plaintiffs as the grounds of their claims.  He says that no administration was ever taken out on Mary's estate, and that he was advised, as she died unmarried and under age, her interest in the estate which came from her father belonged to her father's other children then living, in equal shares, to the exclusion of her mother ; that Kent and Margaret his wife, in an answer by them filed in the case of Emerson against the respondent and others, waived and released all claim and right which they might have to a distributive share of the personal estate of Mary ; that they petitioned this court for partition of the wife's share, being one sixteenth, of several parcels of land to which she claimed to be entitled by descent from George ; that thereupon a parcel of land was set off in severalty to Margaret Kent, her heirs and assigns, which the respondent avers was her whole share of the undivided premises described in the petition, and in which she had an estate in fee simple, and that she and her heirs are for ever barred from having or claiming any other part or parcel of those lands, &c.  The respondent further says, that no part of the real or personal estate was set off exclusively for the use of Margaret Kent, except that above referred to, but that the whole which was devised to the widow and children of the testator was under the care and management of the executor.  He states that in July 1827, he was appointed guardian of Margaret, the daughter, Paulina, and Ellen, who were then under age.  He annexes to his answer various accounts ; and he submits to the decision

of the Court divers questions respecting the rights of the plaintiffs in the property devised and the income thereof.

The answer of Kent sets forth his claims in virtue of his intermarriage with the widow of the testator.

The answer of Washburn, administrator, with the will annexed, on the estate of George, and executor of the will of Margaret Tucker, denies the right of Margaret Kent to any share in the real estate of Mary, and especially denies the right of Paulina to go behind the judgment of the court upon the petition of Kent and his wife for partition, and denies the right of Paulina to any more than an equal share with Margaret Tucker in the income and interest of the real or personal property, and any more than an equal share of the property itself, embraced in the two clauses above recited of the will.

*Aylwin* and *Cooke*, for the plaintiffs. It has been determined, in the case of *Emerson* v. *Cutler et al.* 14 Pick. 115, that the bequest of one third of the personal property to the wife for life, and at her decease to the children, gave a contingent and joint interest to the children who were living at the death of the mother. The same words are used by the testator in regard to one third of the real estate, and the language is proper to create a joint tenancy. There is nothing on the face of the will that shows an intent to give a tenancy in common ; nor will such an estate result from the will as affected by any statute. *St.* 1785, *c.* 62, § 4 ; *St.* 1783, *c.* 52 ; *Appleton* v. *Boyd*, 7 Mass. R. 132. Paulina is therefore entitled to this whole third, as well of the real as of the personal estate. The devise of the real estate was perhaps contingent ; *Billingsley* v. *Wills*, 3 Atk. 219 ; *Batsford* v. *Kebbell*, 3 Ves. 363 ; *Hanson* v. *Graham*, 6 Ves. 239 ; and if so, then on this ground likewise is Paulina entitled to this third of the real estate.

The proviso in *St.* 1805, *c.* 90, § 1, that when any child shall die under age, not having been married, his share of the *inheritance*, that came from his father or mother, shall descend, in equal shares, to his father or mother's other children, &c., does not apply to real estate *devised* to such child. *Sheffield* v. *Lovering*, 12 Mass. R. 490. Consequently a share of the real estate devised to Mary and Ellen respect've-

ly, descended to the mother, and Paulina is entitled to the same as heir to the mother. The judgment for partition was founded on the mother's claim under George alone; it would not have been a bar to a subsequent petition in regard to the share which descended to her from Mary. Partition moreover affects the possessory right only, and not the title. *Pierce* v. *Oliver*, 13 Mass. R. 213; *Colton* v. *Smith*, 11 Pick. 314. So that at law, Paulina would be entitled to recover, as heir to her mother, one fifth of Mary's share. At any rate, as the partition was probably founded on a mistake, this Court, sitting as a court of equity, will rectify the mistake and decree according to the rights of the parties independently of the partition.

*Washburn*, pro se, contended that the word *inheritance* in the statute of 1805 embraces estate acquired by devise from a parent, and that consequently the mother did not inherit from Mary; Lit. § 9; *Prov. St.* 9 *Anne, c.* 2, Ancient Charters, &c. 399; *St.* 1783, *c.* 36, § 1; *Mayo* v. *Boyd*, 3 Mass. R. 13; 4 Dane's Abr. 536; and that as Ellen, though married, died without issue, her share came within the reason of the proviso and descended to her sisters, to the exclusion of the mother; that the partition was a bar to any claim by or through the mother, to any part of Mary's share; *St.* 1783, *c.* 41, § 1; *Cook* v. *Allen*, 2 Mass. R. 462; and that the devise of one third of the real estate created a tenancy in common; *Shattuck* v. *Stedman*, 2 Pick. 468; 2 Kent's Comm. (1st edit.) 284; 4 Kent's Comm. 357; *Randall* v. *Phillips*, 3 Mason, 378; *Rigden* v. *Vallier*, 2 Ves. sen. 258.

SHAW C. J. delivered the opinion of the Court.

1. The first question arising in the present case is, what was the nature of the estate, so far as the real estate was concerned, given by Beza Tucker's will to his wife for life, and at her decease to his children. We have already had occasion to consider the effect of that clause in the will, (in *Emerson* v. *Cutler et al.* 14 Pick. 108,) and we have come to the opinion, as to the personal property, that it was a gift to the wife for her life, with an executory bequest over, at her decease, to the five children, that it was contingent and did not vest the property in the legatees till the death of the

mother, and of course went to those who were surviving at
her decease. We were also of opinion, that it was joint, and
that it did not come within the provisions of the statute in
relation to joint tenancies.

In regard to the real estate, the Court are all of opinion,
that it constituted a vested remainder in the children; and
that this clause in the will, by force of *St.* 1785, *c.* 62, § 4,
must be construed to give an estate to the children as ten-
ants in common. The provision is, that all gifts, &c., of
any lands, &c., made to two or more persons, &c., shall be
taken to be estates in common and not in joint tenancy, unless
it shall be therein said, that the grantees, feoffees or de-
visees, shall hold the same lands, &c., *jointly*, or as *joint
tenants*, or *to them and the survivor*, or unless other words
are used, clearly and manifestly showing it to be the intention,
that such lands, &c., should vest and be held as joint estates,
and not as estates in common. To construe a gift as of a
joint estate, under this statute, it must appear that the dis-
tinction between a joint estate and a tenancy in common,
was in the mind of the donor, and that he clearly intended
to create a joint estate, or that such construction is required
in order to carry into effect a declared or manifest intent.
The generality of the latter words in the clause, is to be
restrained by the character of those which precede; it is
to be construed by the maxim, *noscitur a sociis*. Any other
construction would in effect repeal the statute. If all words,
since the statute, were to be construed as showing a man-
ifest intention to give a joint estate within the meaning of
the statute, which would be so construed at common law,
the statute would be inoperative. In the will in question,
there are no words like those put by way of example in
the statute, and no words manifesting a clear intent of the
testator to create a joint tenancy, having a distinction be-
tween that and a tenancy in common, in his mind, and
therefore we are all of opinion, that by force of this statute,
this clause in the will gave a vested remainder to the five
children as tenants in common. Of that third of the real
estate therefore, Paulina, at the death of her mother, took
one fifth in her own right, one fifth of one fifth as heir of

Mary, the same as heir of George, and the same as heir of Ellen. It is understood, that Margaret was of age and made a will, so executed as to pass real estate, and therefore her one fifth, being a vested estate, passed by her will to her devisee.

2. The next material question is, whether upon the death of Mary Tucker under age and not having been married, her mother took a share of her estate, with the brother and sisters; and the Court are of opinion that she did.

Whatever doubts there may have been under the provisions of the provincial statutes, and the statute of 1783, c. 36, regulating the descent of estates, many of which provisions were obscure and ambiguous, we think the case is clear, under the statute now in force and which was in force at the time of Mary's decease.    St. 1805, c. 90, § 1. [Revised Stat. c. 61, § 1.]

This statute provides, that when any person dies seised of any estate, not having lawfully devised the same, if he have no issue nor father, the same shall descend in equal shares to the intestate's mother, if any, and to his brothers and sisters, and the children of any deceased brother or sister by right of representation. This provision precisely embraces the case of Mary, and furnishes the rule governing the descent of her estate, unless it is qualified and controlled by the subsequent proviso, which is to the following effect : Provided, however, that when any child shall die under age, not having been married, his share of the inheritance, that came from his father or mother, shall descend in equal shares to his father's or mother's other children then living respectively, and to the issue of such other children as are then dead, if any, by right of representation. And we are of opinion, that the estate which this daughter took by devise from her father cannot be considered as a share of the inheritance, the descent of which was intended to be regulated by this clause of the statute.

The purpose of the whole section is to regulate the descent of intestate estate. The last clause cited, the proviso, does not make a rule for a separate and distinct case, but only modifies one of the rules under given circumstan-

Nash
*v.*
Cutler.

ces. It is an exception from the generality of the ante-cedent rule. The whole purpose is the descent of intestate estate ; and we think the effect is, that where upon the descent of an estate to children, one of them shall happen to die in infancy, that is, at any time before arriving at the age, at which, by law, he has the power of disposing of his estate, and before he has by marriage contracted obli-gations and established new connexions which change his relative situation to others, his share of the inheritance, that is, his portion of the intestate estate, for the descent of which this statute is now providing, shall go just in the same manner as if such child had died in the lifetime of the ancestor, or, in other words, to those who would have taken the same share if such child had not existed. It directs that it shall go to the other children of the parent from whom it came, which it would have done, had the child so dying not been in existence at the time of the decease of such parent. It is rather giving a new destination to that portion of the parent's estate, which has in some measure failed to accomplish the design of the legislature by the premature death of such child, than to provide a new and distinct rule of distribution for such child's own estate. This clause therefore being confined to the case of descent of the *share of the inheritance*, thus coming by descent, it would be a forced construction to hold that it extends to estate which a devisee takes by will, and which is by law considered to be an estate by purchase. It would seem to be repugnant alike to the technical meaning and legal effect of the words, "share of the inheritance," and to the general intent and purpose of the statute. The descent of the estate of Mary Tucker therefore is regulated by the general provision of the statute ; this is not restrained or qualified by the proviso and of course the mother took a share as heir of her daugh-ter, equally with the surviving brother and sisters. This question is not raised in regard to either of the others, be-cause George was of full age, Ellen had been married, and Margaret was of full age, at the time of their respective deaths.

3. The only remaining question is, whether the respon-

Nash
v.
Cutler.

dent Kent, who has survived his wife, Margaret, is now precluded from claiming a share of the income of the real estate, which descended to his wife from her daughter Mary, from the time of her decease to the time of the decease of the mother, in consequence of the fact, that after the death of Mary and George, Kent and his wife presented a petition for partition of her share of the estate which descended to her from her son George, who died over twenty-one, not claiming any share by descent from her daughter Mary, who died under twenty-one. This was probably done under a mistaken belief, that, by law, the mother did not take a share in the estate of this daughter. This partition is relied upon as in the nature of an estoppel, and the question is whether it can avail.

It is obvious that this question is now of no importance as it regards the land itself, because if a share of this estate did vest in the mother, she afterwards died intestate not having had issue by her surviving husband, so that, on her decease, this share of the estate descended to the plaintiff Paulina, then her only surviving child and heir at law. But in regard to the profits, it may still be a question between the plaintiffs and the defendant Kent.

It was stated on the argument, that by the answers the defendants submit to account for the rents and profits according to the rights of the parties. If so, we have no doubt, that Kent is entitled to this share of the rents and profits of that portion of his wife's real estate which descended to her from her daughter Mary, so far as he has not waived the same by some agreement, or by his answers in this or any former case.

But without relying on this submission, we are of opinion, that the partition did not preclude Kent from claiming these rents. The objection is in nature of an estoppel, and is to be construed strictly, and not extended by any equitable construction. Whatever effect this partition might have had upon a real action between the same parties on the question of title, we think it has none upon the equitable rights of the parties. It has been frequently considered, that partition affects only the right of possession, and is not to be taken as evidence upon the right of property. Here, by consen•

of all parties, the real estate was permitted to remain in the possession of the respondent Cutler, the executor of the will and the guardian of several of the children, and he must be deemed to have received the rents and profits for those beneficially entitled to them. As Kent, during the coverture, was entitled to the beneficial use and possession of a share of the real estate of his wife, which descended to her from her daughter Mary, we are of opinion, that in equity Cutler ought to account for that proportion of the rents and profits to Kent, and of course that, to this extent, the plaintiffs are not entitled.